# United States Court of Appeals for the Eighth Circuit

League of Women Voters of Arkansas, et al.,
*Plaintiffs-Appellees*,

Protect AR Rights, et al.,
*Intervenor Plaintiffs-Appellees*,

v.

Cole Jester, in his official capacity as the
Secretary of State of Arkansas,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the Western District of Arkansas
No. 5:25-cv-5087 (Hon. Timothy L. Brooks)

**Appellant's Emergency Motion for Partial Stay Pending Appeal and Temporary Administrative Stay Pending Consideration of this Motion**

Arkansas has "encountered fraud in the initiative process." *Miller v. Thurston*, 967 F.3d 727, 740 (8th Cir. 2020). In 2012, for example, there were "widespread" issues. Ark. Act 1413 of 2013, § 1(a)(6). Arkansas has thus sought to rehabilitate "confidence and trust" in the process. *Id.* § 1(a)(3), (b), (d). It enacted petition-integrity laws, *see* Ark. Acts 312, 1085, 1413, and 1432 of 2013, and has continued to finetune them to address realized and potential deficiencies.

Plaintiffs and Intervenors (collectively, Plaintiffs) obtained a preliminary injunction related to, among other laws, (1) Act 240 of 2025, requiring photographic identification to sign a petition; (2) the READ Act, *see* Act 247 of 2025, § 1, requiring people to read or hear the ballot title before signing a petition; and (3) Act 241 of 2025, requiring, in relevant part, all canvassers to file a post-circulation affidavit confirming compliance with Arkansas laws while canvassing.

Secretary of State Jester moved for a partial stay below. *See* Ex. 1; Fed. R. App. P. 8(a)(1)(A), (C). Because of irreparable, ongoing harm, Jester requested a ruling by December 9, 2025. Ex. 1, ¶ 6. The district court has not ruled, necessitating this motion.

## Argument

Jester is entitled to a partial stay of the preliminary injunction pending appeal: (1) he is likely to succeed on the merits; (2) he will be irreparably injured without a stay; (3) a stay will not substantially injure Plaintiffs; and (4) the public interest favors a stay. *Kansas v. United States*, 124 F.4th 529, 533 (8th Cir. 2024).

### I. Jester is likely to succeed.

The order below has "serious and substantial legal issues," *Ark. Peace Ctr. v. Ark. Dep't of Pollution Control*, 992 F.2d 145, 147 (8th Cir. 1993), which are exacerbated by Plaintiffs' decision to bring "disfavored" facial challenges. *Brakebill v.*

Appellate Case: 25-3389     Page: 2     Date Filed: 12/10/2025 Entry ID: 5586924

*Jaeger*, 905 F.3d 553, 558 (8th Cir. 2018). Jester is likely to succeed on all claims and is nearly certain to succeed on the photo-identification requirement, the READ Act, and the post-circulation affidavit—and enjoining enforcement of them causes particularly egregious harm, *see infra* pp. 20-22.

For petition laws, courts ask two questions. First, do the challenged laws implicate the First Amendment? *SD Voice v. Noem*, 60 F.4th 1071, 1077 (8th Cir. 2023). Laws do if they "affect the communication of ideas associated with the circulation of petitions": if they "only make the process difficult," the First Amendment is not implicated. *Miller*, 967 F.3d at 737 (citation modified). Even regulating how a petition is signed—"core political speech"—is not a "First Amendment problem on its face." *Id.* at 738.

Second, if the First Amendment is implicated, which standard of review applies? *Id.* at 739. To answer that, courts consider the burden's "character and magnitude." *Id.* If the burden is "severe," strict scrutiny applies, requiring narrow tailoring and a compelling state interest. *Id.* If, on the other hand, there are "relatively simple ways" to comply with the law, the burden is not severe and "lesser scrutiny applies," requiring only that the law "is reasonable, nondiscriminatory, and furthers an important regulatory interest." *Id.* at 739-40. Arkansas need not "present

Appellate Case: 25-3389     Page: 3     Date Filed: 12/10/2025 Entry ID: 5586924

elaborate, empirical verification" to support its interests, and it may foresee and "respond to potential deficiencies." *Id.* at 740 (citation modified).

### A. Plaintiffs did not meet their heavy burden for facial challenges.

Plaintiffs facially challenge the three laws at issue here (though Intervenors also bring an as-applied challenge to the READ Act). *See* R. Doc. 25, at 18, 31; R. Doc. 13, at 6. That makes their case "hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). Plaintiffs must show the laws' "unconstitutional applications substantially outweigh [their] constitutional ones." *Id.* at 723-24. Neither the district court nor Plaintiffs applied that analysis, so Jester is likely to succeed.

*First*, the district court flipped Plaintiffs' burden onto Jester. Without mentioning Plaintiffs' burden, the district court suggested in a footnote that it was Jester's burden to *dis*prove a law's facial invalidity. *See* Ex. 2, at 36 n.17 (citing *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 468 n.7 (2005)). But that pincite to *Paxton* confirms it is Plaintiffs' burden to show that a law's unconstitutional applications "substantially outnumber" its constitutional ones. 606 U.S. at 468 n.7.

*Second*, Plaintiffs provided no evidence to satisfy their burden regarding the laws' sweep. The original Plaintiffs failed to even respond to Jester's facial-challenge argument, *see* R. Doc. 42, and Intervenors did little more than claim facial challenges are proper because "[a]ll canvassers must comply with these requirements in

4

exactly the same way." R. Doc. 43, at 44. But even when laws apply the same way, that does not mean the burdens they impose are the same. And assuming the challenged laws implicate the First Amendment, Plaintiffs have failed to show the laws would impose a severe burden on most people. *See Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 198-203 (2008) (plurality). (For example, they did not show that most people would be burdened by the photo-identification requirement because they may not take identification to a "farmers market." *See infra* p. 8.)

Because the district court ignored Plaintiffs' burden, *see Brakebill*, 905 F.3d at 558-59, and Plaintiffs failed to assemble evidence to meet their burden, Jester is likely to succeed. *See Crawford*, 553 U.S. at 204 (plurality); *id.* (Scalia, J., concurring).

### B. Verifying petitioners' photographic identification does not violate the First Amendment.

Act 240 requires petitioners, before signing, to present photographic identification to canvassers "to verify the [petitioner's] identity." Ark. Code Ann. § 7-9-109(g)(1). Unless a canvasser views a petitioner's identification, the canvasser cannot accept a signature. *Id.* § 7-9-109(g)(2). Acceptable identification comes in many forms, including a free voter identification card. *See id.* §§ 7-9-109(g)(4), 7-1-101(40)(C)(viii), 7-5-324(c)(1). Jester is likely to succeed against this challenge because the district court erroneously held that the requirement (1) implicates

Appellate Case: 25-3389    Page: 5    Date Filed: 12/10/2025 Entry ID: 5586924

Plaintiffs' First Amendment rights; (2) is content based; and (3) is a severe burden. Ex. 2, at 53, 55-56.

*First*, the photo-identification requirement does not implicate the First Amendment; it regulates who may sign a petition. In *Hoyle*, plaintiffs challenged a requirement that only registered voters sign a petition. 265 F.3d at 703. *Hoyle* upheld that requirement against a free-speech challenge because it "merely regulates who qualifies to legally sign an initiative petition." *Id.* at 704. Thus, it "did not implicate the First Amendment." *Miller*, 967 F.3d at 738 (characterizing *Hoyle*). So too here.

The photo-identification requirement limits who may sign a petition to people who verify their identity via photographic identification. The district court concluded otherwise because "Act 240 does not change the definition of qualified petitioners." Ex. 2, at 53. But Arkansas does not use the term "qualified petitioner" or have one legal provision specifying who is qualified to sign petitions. Instead, Arkansas regulates who may sign through various provisions. *See, e.g.*, Ark. Const. art 5, § 1; Ark. Code Ann. § 7-9-103(a)(1)(A). And the fact "it's hard to imagine how a canvasser would" view identification unless he "asked" does not change things. Ex. 2, at 53. If it did, *Hoyle* would have implicated the First Amendment because the "canvasser's affidavit," 265 F.3d at 702, required canvassers to "verif[y]" their belief that petitioners truthfully provided their "name" and "residence" and were

6

Appellate Case: 25-3389    Page: 6    Date Filed: 12/10/2025 Entry ID: 5586924

"legal voter[s]." Ark. Act 197 of 1991, § 1. Verifying identification no more implicates the First Amendment than requesting names, residences, and voter status. Instead, people must merely verify their identity before signing a petition—that is, before they are petitioners. This falls squarely within laws that "regulate[] who qualifies to legally sign." *Hoyle*, 265 F.3d at 704.

*Second*, the requirement is not content based. The district court concluded otherwise because people also sign petitions related to "independent candidates and new political parties." Ex. 2, at 56. But that does not make the requirement content based.

For one, the requirement distinguishes between speakers in different processes—speakers in the initiative process and speakers supporting independent candidates or new political parties. States may regulate different speakers engaged in different processes in different ways without engaging in content-based regulation. That is why a law distinguishing between speakers "roam[ing] the fairgrounds and discuss[ing] their beliefs" and speakers "ask[ing] for donation for their cause" was "content neutral." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 72-73 (2022) (discussing *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981)). Such speaker-based regulation triggers strict scrutiny only if it "reflects a content preference," *Reed v. Town of Gilbert*, 576 U.S. 155, 170

Appellate Case: 25-3389     Page: 7     Date Filed: 12/10/2025 Entry ID: 5586924

(2015) (citation omitted), which the photo-identification requirement does not do. Instead, it is "agnostic as to [the] content" or "substantive message" of the speaker, looking only to the process in which the speaker is engaged. *City of Austin*, 596 U.S. at 69, 71.

Further, *Wellwood v. Johnson*, 172 F.3d 1007 (8th Cir. 1999), controls. There, Arkansas increased the signature threshold for petitions on local-option elections (*i.e.*, whether a county will be "wet" or "dry"). 172 F.3d at 1008. The threshold for other issues was not similarly increased. *Id.* at 1009-10. This Court held that, when petitioning laws differentiate between types of issues, rather than viewpoint, First Amendment claims fail, *id.* at 1010, because such laws "d[o] not implicate the First Amendment," *Miller*, 967 F.3d at 738 (characterizing *Wellwood*). *Wellwood*'s reasoning that applied to differential treatment within a single process (local initiatives) applies with even greater force here, where Arkansas has treated two different processes—initiatives and candidate access—in different ways.

*Third*, even assuming the photo-identification requirement implicates the First Amendment, the district court's conclusion that it imposes a severe burden is wrong. As *Crawford* demonstrates, obtaining and presenting photographic identification in voting "surely does not qualify as a substantial burden." 553 U.S. at 198 (plurality); *see id.* at 209 (Scalia, J., concurring) ("simply not severe"). The district

8

court sidestepped *Crawford* because it believed that Arkansas requires a fee for photographic identification. Ex. 2, at 55. But no party made that argument for good reason: photographic identification is free. Petitioners may use identification listed "under § 7-1-101(40)," § 7-9-109(g)(4), which includes "[a] voter verification card," § 7-1-101(40)(C)(viii). And when issuing that card, the relevant official "shall not require or accept payment." *Id.* § 7-5-324(c)(1). *Crawford*'s holding thus controls: the photo-identification requirement is not severe.

Apart from the district court's misinterpretation of Arkansas law, its findings regarding the severity of the burden are deficient. It asserted that people (1) "may not have an ID" at "the farmers market or university campus" and (2) "may not feel comfortable showing their ID to a canvasser." Ex. 2, at 55. But as *Crawford* noted, a photo-identification requirement does not become unconstitutional because people may not have identification with them for reasons "arising from life's vagaries." 553 U.S. at 197 (plurality). The possibility that some petitioners may go places without identification—something for which Plaintiffs provided no empirical evidence—does not suddenly convert the requirement into a facially severe burden. Nor does the discomfort of showing identification "represent a significant increase over the usual burdens of" signing a petition. *Id.* at 198. Petitioners must still

9

provide significant personal information: "name, address, birth date, and" signature. § 7-9-103(a)(1)(A).[1]

The requirement is not a severe burden, so it need only be reasonable, nondiscriminatory, and further an important government interest. The requirement satisfies this lower scrutiny (though it would survive strict scrutiny for the same reasons) because Arkansas's interest in preventing fraud and promoting petition integrity is "paramount," *Dakotans for Health v. Noem*, 52 F.4th 381, 389 (8th Cir. 2022), and requiring photographic identification is an "eminently reasonable" way to accomplish those goals, *Crawford*, 553 U.S. at 209 (Scalia, J., concurring). And the law is nondiscriminatory, applying equally to all initiative petitions. *See* § 7-9-109.

### C. Petitioners reading or hearing ballot titles they sign does not violate the First Amendment.

Under the READ Act, before signing a petition, petitioners must—in a canvasser's presence—either "read[]" or hear "the ballot title … read aloud." § 7-9-103(a)(1)(A). For canvassers, the READ Act only prohibits them from "knowingly accept[ing] a signature" from a petitioner who did not comply with the READ Act in their presence. *Id.* § 7-9-103(c)(11). The district court erred by (1) finding Plaintiffs have standing to challenge this provision; (2) holding the READ Act implicates

---

[1] To the extent the Court collapsed its analysis with other laws, that was improper and is another basis on which Jester is likely to succeed. *See infra* pp. 11-12.

Appellate Case: 25-3389    Page: 10    Date Filed: 12/10/2025 Entry ID: 5586924

the First Amendment; (3) indistinguishably analyzing the READ Act with two other, unrelated laws; and (4) concluding the READ Act violates the First Amendment.

*First*, to establish an injury in fact for statutes with knowledge elements, plaintiffs must allege an intent to knowingly engage in the proscribed conduct. *See Tex. State LULAC v. Elfant*, 52 F.4th 248, 256 (5th Cir. 2022). "Uncertainty" about a law's application is insufficient. *Id.*; *see Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1079 (8th Cir. 2024) (no standing for First Amendment claim because plaintiffs "show[ed] no desire to" engage in the proscribed conduct). This differs from when "intent is not an element of a challenged statute," so a "likelihood of inadvertently or negligently" violating a law can be "sufficient." *281 Care Comm. v. Arneson*, 638 F.3d 621, 629 (8th Cir. 2011).

Plaintiffs alleged they were "unsure" about the READ Act's applicability, not a desire to violate the law. *E.g.*, Ex. 3, ¶ 6; Ex. 4, ¶ 31. Plaintiffs did not dispute that fact, only the legal relevance of it. *See* R. Doc. 42, at 6-7; R. Doc. 43, at 5-6. The district court, however, stated that Plaintiffs "have alleged that they want to accept signatures without waiting for petitioners to read or have the ballot title read to them." Ex. 2, at 30. Jester is unaware of any basis for that finding.

*Second*, the READ Act does not implicate the First Amendment, much less *Plaintiffs'* rights. Instead, it is directed at petitioners, who must read or hear the

11

ballot title before signing. § 7-9-103(a)(1). It does not regulate the communication of ideas. *See Miller*, 967 F.3d at 737-38. Holding otherwise, the district court looked beyond the face of the statute because "[i]n the real world" canvassers may not want to interrupt petitioners complying with the READ Act. Ex. 2, at 54. That the district court speculated about "the real world" in a few hypotheticals is evidence that the facial challenges fail. *See supra* pp. 3-4. The law's text does not require canvassers to alter their communication of ideas. The fact that social mores might increase "the difficulty of the process is insufficient to implicate the First Amendment." *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997).

*Third*, the district court muddled its analysis of the READ Act with two separate legislative acts, finding they collectively impose a severe burden and fail strict scrutiny. Ex. 2, at 52-59. It mixed the READ Act with the photo-identification requirement and a third law (not at issue here) that requires canvassers to inform petitioners that "petition fraud is a criminal offense." § 7-9-103(a)(7). It offered no legal authority to collapse these disparate acts together, and caselaw indicates they must be analyzed separately. For example, in *Initiative & Referendum Institute v. Jaeger*, this Court analyzed two canvasser regulations—a residency requirement and a commissions ban—independently, even though both directly regulated canvassers and plaintiffs asserted that both made it more difficult to "collect signatures." 241

12

F.3d 614, 617-18 (8th Cir. 2001) ("*I&R Inst.*"); *see Miller*, 967 F.3d at 738-39 (independently analyzing whether laws implicate the First Amendment). Independent analysis also aligns with Plaintiffs' burden to show Article III standing "with respect to each provision they challenge." *Reynolds*, 89 F.4th at 1076 (citation omitted). The district court erred by not independently analyzing these disparate laws.

*Fourth*, because there are "relatively simple ways" to comply with the READ Act, its burden is not severe. *Miller*, 967 F.3d at 740. The law only penalizes canvassers who "knowingly accept[] a signature" from petitioners who did not comply. *Id.* § 7-9-103(c)(11). It is simple to comply, such as by watching petitioners read the ballot title before signing or asking them to confirm that they did so. This simple act is even less burdensome than multi-step procedures this Court has held are not severe. *Miller*, 967 F.3d at 740 (simple to "advertise" on "traditional and social media," to "bring the sterilized petition" to private homes, and to "safely transfer[]" the sterilized petition "with little to no contact"). Lesser scrutiny applies. *Id.*

Applying that scrutiny, the READ Act is nondiscriminatory because it applies to all petitions; it is reasonable because it allows petitioners to confirm neither a mistake nor a bad actor is inducing them to sign the wrong petition; and it furthers Arkansas's paramount interest in protecting the integrity of the process because it combats fraud and corruption (like canvassers tricking petitioners into signing the wrong

13

petition) and prevents unintentional mistakes (like accidentally signing the wrong petition).

The district court discredited Arkansas's interest, insinuating that it must wait to be harmed. *See* Ex. 2, at 58 (stating that Arkansas "offered no evidence of" certain conduct). But Arkansas is entitled to act reasonably and preemptively to address these concerns, especially considering its long history of fraud. *See Miller*, 967 F.3d at 740; R. Doc. 39, at 4-11 (providing a detailed recent history); *supra* p. 1. And it would survive strict scrutiny for the same reasons if it applied.

### D. Requiring canvassers to certify they followed the law does not violate the First Amendment.

Only some Plaintiffs challenge Act 241, which in part requires paid and volunteer canvassers to file an affidavit "certifying that the canvasser has complied with the Arkansas Constitution and all Arkansas law regarding canvassing, perjury, forgery, and fraudulent practices in the procurement of petition signatures." Ark. Code Ann. § 7-9-111(j)(1). Generally, signatures collected by a canvasser cannot be counted until the affidavit is filed. *Id.* § 7-9-111(j)(2). The district court erred by holding this requirement (1) implicates the First Amendment and (2) fails constitutional scrutiny.

*First*, the post-circulation affidavit implicates Plaintiffs' free-speech rights only if it affects "the communication of ideas associated with the circulation of

14

petitions." *Miller*, 967 F.3d at 737-38 (quoting *Dobrovolny*, 156 F.3d at 1113). The requirement, however, does not regulate communication; it is an after-the-fact confirmation that canvassers complied with the law. Below, Plaintiffs did not respond to Jester's argument that the post-circulation affidavit did not implicate the First Amendment. *See* R. Doc. 42, at 12-13. The district court, however, asserted that Plaintiffs' First Amendment rights were implicated because canvassers' failure to file an affidavit would "nullif[y]" the "core political speech" of nonparty petitioners. Ex. 2, at 59-60 (citation omitted). The district court's approach has two reversible defects.

For one, it raises third-party standing problems that Plaintiffs cannot overcome. *See, e.g.*, *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008); *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 864 F.3d 905, 912 (8th Cir. 2017). Though sponsors may have standing to challenge canvasser regulations when sponsors' and canvassers' legal "interests are highly intertwined, if not inseparable," *Dakotans for Health*, 52 F.4th at 387, Jester is unaware of (and the district court did not cite) caselaw that allows sponsors and canvassers to assert claims on behalf of petitioners, especially when they have not shown the requisite close relationship or hindrance, *see Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

Appellate Case: 25-3389    Page: 15    Date Filed: 12/10/2025 Entry ID: 5586924

Moreover, Plaintiffs never advanced the district court's position, depriving Jester of any opportunity to address it. In other words, the district court "[e]lect[ed] not to address the party-presented controversy," instead choosing to "takeover" Plaintiffs' claim. *United States v. Sineneng-Smith*, 590 U.S. 371, 379-80 (2020). The failure to follow the party-presentation principle is another ground to find Jester is likely to succeed. *Id.* at 380 (vacating and remanding); *see Clark v. Sweeney*, No. 25-52, 2025 WL 3260170, at *2 (U.S. Nov. 24, 2025) (per curiam).

*Second*, even assuming the First Amendment were implicated, the district court incorrectly found that the post-circulation affidavit fails "any level of scrutiny." Ex. 2, at 60. Its error resulted from three missteps.

Initially, the district court incorrectly analyzed the burden's "character and magnitude." *Miller*, 967 F.3d at 739 (citation omitted). In finding a severe burden, the district court was concerned about the supposedly "draconian" measure of "invalidat[ing] … signatures collected by a canvasser" who fails to file the affidavit. Ex. 2, at 60. But the magnitude inquiry is focused on a party's *ability* to comply with the requirement—not the downstream effects of a failure to comply. *Miller*, 967 F.3d at 740; *cf. Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 610 (2021) (distinguishing between "the severity of any demonstrated burden" and "the scope of the challenged restrictions"). If there are "relatively simple ways" to comply, the law does

not "impose[] severe burdens" and "[s]trict scrutiny is therefore not applicable." *Id.* Filing a post-circulation affidavit is simple: canvassers need only sign a sheet of paper confirming they followed the applicable law. § 7-9-111(j)(1). The lower level of scrutiny applies.

Further, the district court's scrutiny analysis contains factual and legal errors. For one, it said "petition part affidavits" already serve any interest Arkansas has. Ex. 2, at 60. But those affidavits require paid canvassers to verify their compliance with only three subsets of laws. *See* § 7-9-109(a). The post-circulation affidavit provides far greater coverage because it requires all canvassers to verify compliance with *all* applicable laws.

Similarly, before the post-circulation affidavit, paid and volunteer canvassers were not required to verify that they followed applicable laws *while* canvassing. But the district court rejected this description as "misleading" because *paid* canvassers—not volunteer canvassers—submit "[a] signed statement" *before* collecting signatures "that they read and understand the applicable law and have not been convicted of a disqualifying offense." Ex. 2, at 22 (citing Ark. Code Ann. § 7-9-601(d)(3)-(4)). This "misleading" accusation overlooks the distinction between paid and volunteer canvassers. There are many volunteer canvassers—look no further than one Plaintiff, who previously organized an "all-volunteer canvassing

effort" of "approximately 750 volunteer canvassers" and "expects that volunteers will collect most of its signatures" this cycle. R. Doc. 25, at 16, 18. Without the post-circulation affidavit, the volunteer canvassers verify *nothing* about their compliance with the laws identified in paid canvassers' pre-circulation statement. The district court also overlooked timing differences and the specific content of the affidavits. *Before* canvassing, a paid canvasser under § 7-9-601 must confirm he *understands* what is lawful: *after* canvassing, all canvassers under Act 241 must affirm they *did* what was lawful.

Third, misinterpreting the coverage of Arkansas's laws, the district court declared there was "[n]othing in the record" to show that the requirement "actually serves any interest other than the General Assembly's apparent desire to make disqualifying citizen petitions easier and more efficient." Ex. 2, at 60. The district court's legislative-purpose conclusion lacks citation, showing there is no basis to depart from the presumption that Arkansas's Legislature acted in good faith. *See Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 6 (2024) ("[I]n assessing a legislature's work, we start with a presumption that the legislature acted in good faith."). In any event, the district court again misunderstood the test: Arkansas is "not required to present elaborate, empirical verification" but may "respond to potential deficiencies in the electoral process with foresight." *Miller*, 967 F.3d at 740

(citation omitted); *see Crawford*, 553 U.S. at 194-95 (substantial interest in fraud prevention and election integrity furthered by addressing "in-person voter impersonation at polling places," even without "evidence of any such fraud actually occurring"); *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672, 685-86 (2021) (reiterating states' interest in fraud prevention and election integrity and state legislatures' right to take proactive, prophylactic measures to deter fraud and increase voter confidence).

Requiring canvassers to confirm they followed the law while collecting signatures reasonably protects the integrity of and public confidence in the initiative process. Not only did Jester detail the continued presence of bad actors in Arkansas's initiative process, *see* R. Doc. 39, at 4-11, the Court has recognized "that Arkansas has encountered fraud in the initiative process before, meaning its interest is legitimate as well as important." *Miller*, 967 F.3d at 740. The requirement is also non-discriminatory to the greatest possible extent, applying to statewide and local petitions. *See* § 7-9-111(j)(1). And it would survive strict scrutiny in any event.

### E. The *Purcell* principle is implicated by the preliminary injunction.

Because "orders affecting elections … can themselves result in voter confusion," courts must weigh "considerations specific to election cases," *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006), like "[f]iling deadlines" and "logistical challenges"

Appellate Case: 25-3389     Page: 19     Date Filed: 12/10/2025 Entry ID: 5586924

preceding Election Day. *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring). Election Day is in November 2026, but the petition process has already begun. Given the recent preliminary injunction, Plaintiffs may soon collect (if they have not already begun collecting) signatures in violation of Arkansas law. Statewide petitions may be submitted to Jester at any time, and at the latest about eight months from now. Ark. Const. art. 5, § 1.

The preliminary injunction allows Plaintiffs to play by one set of laws, while every other sponsor—and petitioners—must play by another set. That impermissibly causes "chaos and confusion." *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring). The READ Act highlights this. Under the READ Act, a petitioner may only sign the petition after reading or hearing the ballot title. § 7-9-103(a)(1)(A). Thus, petitioners who sign petitions must still comply with the requirement, though Plaintiffs have obtained a preliminary injunction to prevent enforcement against them. That situation is rife with chaos—petitioners may (or may not) understand the READ Act applies to them; well-meaning (or not) canvassers may persuade nonparty petitioners that they need not comply because of the preliminary injunction; and petitioners may then give up in confusion or be misled into violating the law. That is just part of what *Purcell* counsels against.

As explained below, *see infra* pp. 20-22, the chaos and confusion that has already infected the process will be essentially impossible to unwind. "[I]t is [the courts'] duty, consistent with *Purcell*, to at least preserve the possibility of restoring" the status quo that existed before the preliminary injunction. *Carson v. Simon*, 978 F.3d 1051, 1062 (8th Cir. 2020).

## II. Jester will be irreparable harmed absent a stay, and the public interest favors a stay.

Absent a stay, Jester will suffer irreparable injury, and the public interest favors a stay. *Cf. Eggers v. Evnen*, 48 F.4th 561, 564 (8th Cir. 2022) (explaining these factors merge when the government is the nonmovant). "Any time a state is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (citation omitted). Beyond Arkansas's democratic interests, there is also irreparable injury specific to the enjoined enforcement of each law at issue here.

Without the photo-identification requirement being enforced, petitioners could sign Plaintiffs' petitions multiple times under multiple names without verifying their identity. As *Crawford* explains, the risk of fraud is "real" and can "affect the outcome of a close election"—or here, a petition that barely receives enough signatures. 553 U.S. at 196 (plurality). For the post-circulation affidavit, Arkansas will be irreparably harmed if unscrupulous canvassers avoid verifying under oath that

Appellate Case: 25-3389    Page: 21    Date Filed: 12/10/2025 Entry ID: 5586924

they followed all applicable laws while canvassing—something no other Arkansas law requires. And for the READ Act, Arkansas will be harmed if petitioners sign a petition unintentionally, whether mistakenly—after all, some petitions are circulated together, *see* Ex. 5, ¶ 4—or they are duped. Underscoring irreparability, if the preliminary injunction related to either the READ Act or the photo-identification requirement is overturned, it will be impossible to excise unlawful signatures from lawful ones. Plaintiffs are presumptively collecting signatures in violation of these laws, given they sued to evade them. But when submitted, there will be no distinction between signatures that complied with law and those that did not. Those irreparable harms—unverified signatures; unintentionally signed petitions—have presumably already started, incurably infecting Plaintiffs' petitions. Even a reversal of the preliminary injunction cannot remedy that harm.

The harm related to the enjoined enforcement of the post-circulation affidavit is also looming. Under Arkansas law, statewide initiative petitions can be filed at any moment. *See* Ark. Const. art. 5, § 1 (no later than four months before the election). From filing, Jester has 30 days to review sufficiency. § 7-9-111(a). That means, if Plaintiffs submit a petition, the preliminary injunction could compel him to declare that petition sufficient even though signatures were collected in violation of Arkansas

Appellate Case: 25-3389     Page: 22     Date Filed: 12/10/2025 Entry ID: 5586924

laws.  Plaintiffs could thus get the ultimate outcome that they seek from this lawsuit, even if Jester ultimately prevails on the merits.

Finally, the existence of other laws, such as criminal laws, will not mitigate the irreparable harm that will occur if the preliminary injunction remains in effect.  Contrary to the district court's conclusions, other Arkansas statutes are not redundant of these laws because, as explained above, the district court misunderstood those provisions' scopes.  Regardless, the fact that criminal laws provide means to punish fraud *after the fact* does not mean there is not irreparable harm from Jester's inability to enforce the provisions at issue here.  As this Court held related to voting, "[e]ven if the State can prosecute fraudulent voters after the fact, it would be irreparably harmed by allowing them to vote in the election." *Brakebill*, 905 F.3d at 560.  Here, Arkansas will be irreparably harmed by the fraud on the front end—a harm that could have been avoided, for example, by deterring potentially fraudulent actors via mandatory photographic identification, permitting petitioners to read the ballot title they are signing, and afterwards, verifying they followed the law while canvassing.

## III.  A partial stay will not substantially injure Plaintiffs.

A partial stay of the preliminary injunction will not substantially injure Plaintiffs for three reasons.  *First*, Jester is likely to succeed on the merits, so Plaintiffs cannot be substantially injured. *Cf. Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015)

Appellate Case: 25-3389     Page: 23     Date Filed: 12/10/2025 Entry ID: 5586924

(plaintiffs seeking preliminary relief who are "unlikely to succeed" cannot show "irreparable harm"). *Second*, maintaining "the status quo is an important consideration." *Kansas*, 124 F.4th at 534 (citation modified). "Here, the status quo ([Arkansas's] duly-enacted [petition] law[s]) was disrupted by" the preliminary-injunction order. *Carson*, 978 F.3d at 1062. Returning the status quo will allow Arkansas to apply its democratically enacted laws equally, placing Plaintiffs on equal footing with all others. *Third*, Jester seeks only a partial stay of the preliminary-injunction order. Thus, Plaintiffs will retain the remainder of the preliminary injunction's benefits, pending further resolution of the issues. *See Brakebill*, 905 F.3d at 561 (partial stay leaves "remainder of the injunction … in effect").

## Conclusion

The Court should partially stay the preliminary-injunction order pending appeal and enter a temporary administrative stay while it considers this motion. Because irreparable harm accrues for every signature obtained in violation of Arkansas law, Jester requests a ruling on this motion as soon as possible.

Respectfully submitted,

TIM GRIFFIN
  Arkansas Attorney General

AUTUMN HAMIT PATTERSON
  Solicitor General

NOAH P. WATSON
  Deputy Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
Little Rock, Arkansas 72201
(501) 682-1019
(501) 682-2591 fax
noah.watson@arkansasag.gov

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,190 words, excluding parts exempt by Federal Rule of Appellate Procedure 32(f).

I also certify that this motion complies with the requirements of Rule 32(a)(5)-(6) because it has been prepared in a 14-point proportionally spaced typeface with serifs, using Microsoft Word.

I further certify that this PDF was scanned for viruses, and no viruses were found on the file.

/s/ Noah P. Watson
Noah P. Watson

Appellate Case: 25-3389    Page: 26    Date Filed: 12/10/2025 Entry ID: 5586924

## Certificate of Service

I certify that on December 10, 2025, I electronically filed this motion with the

Clerk of Court using the CM/ECF system, which notifies CM/ECF participants.

/s/ Noah P. Watson
Noah P. Watson

Appellate Case: 25-3389    Page: 27    Date Filed: 12/10/2025 Entry ID: 5586924